IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTY OF MADERA, a political subdivision of the State of California <br><br> Plaintiffs, <br> v. <br><br> PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS, a tribal entity, et. al., <br><br> Defendants. | CIV F 06-1698 AWI DLB <br><br> ORDER VACATING HEARING DATE OF DECEMBER 19, 2006, AND ORDER ON MOTIONS TO REMAND, TRANSFER, AND TEMPORARY RESTRAINING ORDER |

This case involves a dispute between the County of Madera ("the County") and the Picayune Rancheria of the Chukchansi Indians ("the Tribe"). The Tribe operates a casino and is attempting to construct a hotel and spa on the same land, apparently for use by casino patrons. The Tribe began construction, but the County issued stop work notices because the Tribe did not obtain certain construction permits required by the County. The County filed a nuisance abatement suit against the Tribe in state court and the Tribe removed the suit to this Court. Currently pending before the Court is the County's motion to remand and motion for temporary restraining order. Also pending is the Tribe's motion to transfer. All motions are set for hearing on December 19, 2006. For the reasons that follow, the Court will vacate the December 19, 2006, hearing, grant the County's motion to remand, and deny the Tribe's motion to transfer and the County's motion for temporary restraining order as moot.

# BACKGROUND[1]

The background of this dispute dates back to a 1979 case in the San Jose Division of the Northern District of California, *Hardwick v. United States* No. 79-1710 JF.  Generally speaking, the *Hardwick* case involved efforts by Indians/Native Americans to restore tribal lands and tribal status in the wake of the California Rancheria Act of 1958.  Two consent decrees have thus far resulted from the *Hardwick* case.  The first decree in 1983 resulted in, *inter alia*, the United States recognizing the Tribe as a tribe.  The second decree in 1987 ("the 1987 decree") was signed by the *Hardwick* plaintiffs and the County.  In part, the 1987 decree states that lands covered by the decree are "Indian Country."  The *Hardwick* court indicated that it retained jurisdiction as to disputes arising from the decrees.

In 2004, and in an attempt to collect *ad valorem* taxes, the County brought a motion in the *Hardwick* court to enforce the 1987 decree against the Tribe in the Northern District of California.  The land at issue is owned by the Tribe in fee, and the Tribe operates a casino on the land that the County seeks to tax.  The Northern District denied the motion and held, *inter alia*, that the Tribe was not a party to the 1987 decree.  The Northern District stated that it retained jurisdiction over disputes arising from of the *Hardwick* decrees.

In October 2004, the County filed an *in rem* action in the Madera Superior Court for declaratory relief as to the taxability of the land owned in fee by the Tribe and upon which the Tribe operates its casino, *County of Madera v. 48.53 Acres of Land*, No. MCV 025339.  The *48.53 Acres* case is still pending and, on December 1, 2006, the Madera Superior Court denied a motion to dismiss and held that it had *in rem* jurisdiction over the 48.53 acres.

At some point, the Tribe determined to expand its operations on the 48.53 acres, but the County indicated that the Tribe was required to follow local and state health, safety, and environmental laws.  In October 2006, the Tribe filed a motion in the *Hardwick* court to enforce the 1987 decree against the County in order to prevent the County from interfering with construction activities on the 48.53 acres.  The Tribe argued that it was a third party beneficiary

---

[1] This general background is derived from the filings of the parties.

to the *Hardwick* decrees and that the 1987 decree prevented the County from enforcing local laws with respect to the 48.53 acres.

In November 2006, the County issued stop work notices to the Tribe and its contractors because various County construction permits had not been obtained. On November 21, 2006, the County filed a nuisance abatement action in the Madera Superior Court against the Tribe and its general contractor. The County alleged violations of the Madera County Code. Specifically, that the Tribe had begun construction activities (on the 48.53 acres) without obtaining a demolition permit and a grading permit.

The Tribe removed the nuisance abatement action to this Court on November 21, 2006. Shortly after removal, the County filed an ex parte application for a temporary restraining order against the Tribe. The Court denied the ex parte request for the issuance of a temporary restraining order and instead set a hearing date and briefing schedule. The Tribe then filed a motion to transfer to the Northern District of California, essentially on the basis that the Northern District maintained exclusive jurisdiction over the land and subject matter of the *Hardwick* case, which encompassed the issues in the case at bar. The County then filed a motion to remand and argued that this Court lacked subject matter jurisdiction. In response to the motion to transfer and motion to remand, the Court set a new briefing schedule and set a hearing date of December 19, 2006, for all motions.

On December 7, 2006, the Northern District denied the Tribe's motion to enforce the 1987 consent decree. The Northern District assumed without deciding that the Tribe was a third party beneficiary to the consent decree, but denied the motion because the Tribe's arguments were based on the 1987 decree, federal law, a compact between the Tribe and the State of California, a memorandum of understanding with the County, and an alleged waiver of jurisdiction by the County. The Northern District concluded that these arguments went beyond the 1987 *Hardwick* decree, but that the arguments were more properly suited for a declaratory relief action that could be related to the *Hardwick* case. At the hearing on the Tribe's motion, the court indicated that a declaratory relief action should be heard in the Northern District and related

to the *Hardwick* case.[2]

Pending for resolution before this Court are three motions: a motion to remand, a motion to transfer, and a motion for a temporary restraining order. The motion to remand challenges the jurisdiction of this Court. Since subject matter jurisdiction is non-waivable, the Court addresses the remand motion first.

## **THE COUNTY'S MOTION TO REMAND**

*The County's Argument For Remand*

The County argues that the Tribe's federal questions are tribal immunity and the Indian Gaming Regulatory Act ("IGRA"). However, the Court lacks jurisdiction because the face of the complaint shows that no federal causes of action are pled and the Supreme Court, in a case that post-dates *Onieda*, *Santa Rosa*, and *Cabazon*, has clearly held that tribal immunity is a defense and is no basis for finding a federal question. Also, since this case involves the construction of a hotel and a spa and application of local land use and health laws, there is no authority that suggests that the IGRA is so broad as to encompass this case: this case is simply about the construction of a hotel.[3] Further, the state court in the *48.53 Acres of Land* case has exercised jurisdiction over the land in this case. Under the doctrine of "prior exclusive jurisdiction" and *State Engineer v. South Fork Band of Te-Moak Tribe*, 339 F.3d 804 (9th Cir. 2002), this Court has no jurisdiction. Since the Court has no subject matter jurisdiction over this case, the Court must remand.

*The Tribe's Opposition*

The Tribe argues that a federal question is apparent because the case involves expansion of the "casino operation." See Complaint at ¶ 15. The Tribe argues that under the *Hardwick* stipulations, the County agreed that the property at issue is "Indian country." As Indian country,

---

[2] On December 12, 2006, the Tribe filed a declaratory relief action in the Northern District of California. The *Hardwick* case is assigned to Judge Fogel. The Tribe's declaratory relief case is assigned to Judge Whyte. Based on submissions by the County, the Tribe has filed an administrative motion to relate its declaratory relief case with the *Hardwick* case.

[3] In its reply brief, the County indicates that this case is not about gaming or the casino, but is about the construction of a hotel that is adjacent to the casino.

4

the Tribe's land is separate from the State of California and thus, outside the jurisdiction of the state court. Since the expansion project is wholly related to gaming activities on the Indian lands of a federally recognized Indian tribe, the state court lacks jurisdiction to hear this case. The IGRA was in response to a Supreme Court decision that held States could not regulate gaming activity. The Eighth Circuit has found that the IGRA completely preempts state law. Under the IGRA, Indian tribes can engage in Class III gaming if a valid state-tribe compact is reached. The Tribe engages in Class III gaming and has such a compact. The State has not found a violation of the compact in this case and has stated that it will take no action. Also, the Tribe has followed the relevant sections of its compact (section 10.8 et seq.) regarding environmental impact analysis, and the compact does not provide for the County to enforce local laws. Accordingly, the state courts lack jurisdiction and the County lacks the authority to prosecute its claims.

Finally, the Northern District of California has repeatedly stated that it alone retains jurisdiction over disputes arising from the *Hardwick* stipulations. Because the Northern District retains exclusive jurisdiction over the Rancheria lands and all disputes stemming from the 1987 decree, this Court must defer jurisdiction to the Northern District.

*The County's Complaint*

The complaint in this case is styled as a "Verified Complaint for Nuisance Abatement." The complaint is brought by the County against the Tribe[4] and against the Tribe's building contractor. In part, the complaint alleges that the Tribe owns certain parcels of land "in fee title," and identifies McCarthy Building Companies as the general contractor "for [the Tribe's] hotel construction project." See Complaint at ¶¶ 2, 11.[5] The Complaint also alleges that, in November 2006, "the Tribe began construction with the purpose of adding a large hotel and spa addition to the existing casino operations on the Subject Property," and "the County discovered that the Tribe had engaged [in] grading and demolition activities for their casino expansion without securing the permits required by the Madera County Code." Id. at ¶¶ 14-15. The

---

[4] The complaint also lists the Tribe's tribal council and various tribal officials.

[5] The Complaint is part of Document Number 2 of the Court's Docket. Document No. 2 also contains the notice of removal.

Complaint contains a single cause of action for Nuisance Abatement. Under this cause of action, the County alleges that the "Subject Property in its current condition is a nuisance per se in that it violates the [Madera County Code.]" Id. at ¶ 20. The complaint specifically identifies the violations of Madera County Code § 14.08.090, engaging in demolition activities without a permit, and § 14.50.030, engaging in grading activities without a permit. Id. Because of the violations of the Madera County Code, the County alleges that the Subject Property is a nuisance per se, that the County is entitled to abate the nuisance, that the County is entitled to an injunction prohibiting demolition and grading activity until permits are obtained, and that the County is entitled to fees, costs, and penalties. See Complaint at ¶ 21 & Prayer.

*The Notice of Removal*

The notice of removal in this case states that removal is appropriate under 28 U.S.C. § 1441(b) because the County's complaint contains a federal question under 28 U.S.C. § 1331. See Notice of Removal at ¶ 14.[6] The Notice indicates that the Tribe is a federally recognized Indian tribe and that the action is one that on its face seeks to restrain the Tribe from proceeding with actions within the Tribe's authority within the bounds of the Tribe's federally recognized reservation. Id. at ¶¶ 4-5.

The Notice identifies two potential federal questions. First, citing *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987), *Oneida Indian Nations v. County of Oneida*, 414 U.S. 661 (1974), and *Santa Rosa Band of Indians v. Kings County*, 532 F.2d 655 (9th Cir. 1976), the Notice states this action impermissibly infringes and interferes with the Tribe's right to possession, use, enjoyment, and governance of its lands. Since tribal lands can only be interfered with by Congress, whether and what extent a right to interference may exist is entirely a matter of federal law. Id. at ¶¶ 7-8. Second, the Notice indicates that the Tribe is lawfully operating a casino under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 et. seq., a Tribal-State Compact, and a tribal gaming ordinance. Citing the *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996), the Notice indicates that the IGRA completely preempts

---

[6] Again, the Notice of Removal is part of Document No. 2 in the Court's Docket.

state law. Id. at ¶ 9. Accordingly, the complaint's application of state and local land use law are purely questions of federal law. Id. at ¶ 10.

Additionally, the Notice identifies the *Hardwick* case, states that the *Hardwick* court, through the 1983 and 1987 decrees, maintains continuing jurisdiction over the land that it is the subject of this case, and that the *Hardwick* matter involved the same parties, the same land, the same project, and the same dispute over application of state and local land use law. Id. at ¶ 11.

*Legal Standard*

28 U.S.C. § 1441(b) reads in relevant part: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." Prize Frize Inc. v. Matrix Inc., 167 F.3d 1261, 1265 (9th Cir. 1999); Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988). There is a strong presumption against removal. Gaus v. Miles, Inc., 980 F. 2d 564, 566 (9th Cir. 1992). If there is any doubt as to the right of removal in the first instance, "federal jurisdiction must be rejected." Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996); Gaus, 980 F. 2d at 566.

"The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." California v. United States, 215 F.3d 1005, 1014 (9th Cir. 2000); see California ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004); Duncan, 76 F.3d at 1485. Under the "well-pleaded complaint" rule, courts look to what "necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything in anticipation of avoidance of defenses which it is thought the defendant may interpose." California, 215 F.3d at 1014; Takeda v. Northwestern Nat'l Life Ins. Co., 765 F.2d 815, 821-22 (9th Cir. 1985). "A defense is not part of a plaintiff's pleaded statement of his or her own claim." Dynegy, 375 F.3d at 838. Accordingly, "a case may not be removed on the basis of a federal defense, including the defense of pre-

emption, even if the defense is anticipated in the plaintiff's complaint and both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987); Wayne v. DHL Worldwide Express, 294 F.3d 1179, 1183 (9th Cir. 2002). "In addition, the plaintiff is the 'master' of her case, and if she can maintain her claims on both state and federal grounds, she may ignore the federal question, assert only state claims, and defeat removal." Duncan, 76 F.3d at 1485.  However, the "artful pleading doctrine is a corollary to the well-pleaded complaint rule, and provides that although the plaintiff is the master of his own pleadings, he may not avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim." Lippitt v. Raymond James Fin. Serv., 340 F.3d 1033, 1041 (9th Cir. 2003).  Another corollary to the well-pleaded complaint rule is the doctrine of "complete preemption." Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1107 (9th Cir. 2000).  Under the "complete preemption" doctrine, when the preemptive force of a statute is so strong that it "completely preempt[s]" an area of state law, the federal law displaces a plaintiff's state-law claim and the state claim is considered, from its inception, a federal claim that arises under federal law. Valles v. Ivy Hill Corp., 410 F.3d 1071, 1075 (9th Cir. 2005).

"If at any time prior to judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); Gibson v. Chrysler Corp., 261 F.3d 927, 932 (9th Cir. 2001). "Subject matter jurisdiction cannot be established by consent of the parties, and a lack of subject matter jurisdiction is a non-waivable defect." Gibson, 261 F.3d at 948; see also Lengyel v. Sheboygan County, 882 F. Supp. 137, 138 (E.D. Wis. 1995) ("When a district court determines there is a lack of subject matter jurisdiction, the case shall be remanded, even if the parties prefer to remain in federal court."). "Thus, the court can, in fact must, dismiss a case when it determines that it lacks subject matter jurisdiction, whether or not a party has a filed a motion." Page v. City of Southfield, 45 F.3d 128, 133 (6th Cir. 1995).

With respect to Indian tribes, "Suits against Indian tribes are ... barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509 (1991); Snow v. Quinault

1  Indian Nation, 709 F.2d 1319, 1321 (9th Cir. 1983).  This immunity applies in both federal and
2  state courts.  See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978); Puyallup Tribe, Inc. v.
3  Department of Game of Washington, 433 U.S. 165, 171-73 (1977); Snow, 709 F.2d at 1321;
4  United States v. Oregon, 657 F.2d 1009, 1012-13 (9th Cir. 1981).  Nevertheless, the Supreme
5  Court has specifically held that the defense of tribal immunity does not itself present a federal
6  question sufficient to overcome the well-pleaded complaint rule.  Oklahoma Tax Comm'n v.
7  Graham, 489 U.S. 838, 840-42 (1989); Wiener v. Wampanoag Aquinnah Shellfish Hatchery
8  Corp., 223 F. Supp.2d 346, 350 (D. Mass. 2002).

9  *Discussion*

10  The Court finds itself in a unique situation. The Tribe believes that the Northern District
11  of California has exclusive jurisdiction over the Tribe's Rancheria lands and over disputes
12  arising from the *Hardwick* decrees; since this case involves both the Rancheria lands and the
13  *Hardwick* decrees, the Tribe argues that this Court must yield to the Northern District.  The
14  County believes that this Court lacks subject matter jurisdiction because, there is no federal
15  question involved and the Madera Superior Court (in *48.53 Acres*) has determined that it has *in*
16  *rem* jurisdiction over the property in question.  Thus, albeit for different reasons, the parties
17  ultimately agree with proposition that this Court lacks subject matter jurisdiction over this case.
18  The Court finds it significant that both sides agree that the Court lacks subject matter
19  jurisdiction.  In a case that has been removed, where it appears that the Court lacks subject matter
20  jurisdiction, the consequence that mandatorily follows is remand.  See 28 U.S.C. § 1447(c);
21  Page, 45 F.3d at 133.  The Tribe has filed a motion to transfer, but that motion is premised on
22  exclusive jurisdiction resting outside of the Eastern District.  Although 28 U.S.C. § 1631 allows
23  for a court to transfer when it lacks jurisdiction, 28 U.S.C. § 1631 appears to be a statute of
24  general applicability.  28 U.S.C. § 1447 deals specifically with cases that have been removed,
25  and the mandatory remand language of subsection (c) does not mention § 1631 or indicate that an
26  exception exists.  See 28 U.S.C. § 1447(c); Ensearch International Exploration, Inc. v. Attock Oil
27  Co., 656 F.Supp. 1162, 1167 (N.D. Tex. 1987); cf. Western Sec. Co. v. Derwinski, 937 F.2d
28  1276, 1280 (7th Cir. 1991).  "It is a well-established tenet of statutory construction that a specific

statute controls over a general statute." S.V. v. Sherwood Sch. Dist., 254 F.3d 877, 881 (9th Cir. 2002). Thus, acceptance of the Tribe's argument regarding exclusive jurisdiction leads to the very remand that the Tribe opposes. Nevertheless, that both parties ultimately agree that this Court lacks jurisdiction makes it strongly appear that this Court lacks jurisdiction. See 28 U.S.C. § 1447(c).

In addition to the parties's agreement on the ultimate question, the Court has questions about its jurisdiction. The Tribe offers no response to the County's argument regarding the applicability of *Graham* to this case. Accordingly, given the lack of opposition or clarification, the Court construes paragraphs 7 and 8 of the Notice of Removal as arguing a federal question is presented because the Tribe may invoke sovereign immunity.[7] As such, this is an insufficient basis for federal question jurisdiction. See Graham, 489 U.S. at 840-42.

The County is correct that the well-pleaded claim in the complaint is not a federal cause of action. Instead, the only claim is a nuisance abatement claim based on the failure to obtain a demolition permit and a grading permit as required by the Madera County Code. To overcome this critical deficiency, the Tribe's opposition relies primarily on the IGRA and *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996).

In *Gaming Corp.*, the Eighth Circuit examined the history of the IGRA and determined that the IGRA "has the requisite extraordinary preemptive force necessary to satisfy the complete preemption exception to the well-pleaded complaint rule." Gaming Corp., 88 F.3d at 547. However, the Eighth Circuit also indicated that the term "'complete preemption' is somewhat misleading because even when it applies, all claims are not necessarily covered." Id. at 543. In determining whether a claim falls within the complete preemptive power of the IGRA, see Missouri ex rel Nixon v. Coeur d'Alene Tribe, 164 F.3d 1102, 1105 (8th Cir. 1999), a court asks "whether a particular claim will interfere with tribal governance of gaming." Gaming Corp., 88 F.3d at 549. "Potentially valid claims under state law are those which would not interfere with

---

[7]The Court also notes that in *Caterpillar*, the Supreme Court characterized *Oneida Indian Nation* as asserting a present right to possession. Caterpillar 482 U.S. at 393 n.8. Unlike *Oneida Indian Nations*, this case does not involve a challenge to possession rights and no one disputes that the Tribe rightfully possess the land in question.

10

the nation's governance of gaming." Id. at 550.  State law claims that arise from duties that are independent of gaming are potentially valid claims. See Gaming Corp., 88 F.3d at 550; American Greyhound Racing, Inc. v. Hull, 146 F.Supp.2d 1012, 1051 (D. Ariz. 2001).[8]

Although the Ninth Circuit has never cited *Gaming Corp.*, in *Confederated Tribes of Siletz Indians v. Oregon*, 143 F.3d 481, 486 n.7 (9th Cir. 1998), the Siletz Tribe argued that the IGRA preempted the entire field of Indian gaming.  The issue in *Siletz Indians* was whether the Oregon Public Records Laws required disclosure of a state investigative report of an Indian casino.  Id. at 483-84.  The lower court held that neither the IGRA nor the Siletz Tribe's compact provided for release of the report and enjoined release.  Id. at 484.  The Siletz Tribe argued that IGRA "entirely preempts the entire field of Indian gaming" and cited legislative history that stated, "[IGRA] is intended to expressly preempt the field in the governance of gaming activities on Indian lands. Consequently, Federal courts should not balance competing Federal, State, and tribal interests to determine the extent to which various gaming activities are allowed."[9] Id. at 486 n.7.  The Ninth Circuit rejected the Siletz Tribe's argument because "the application of Oregon law here has no effect on the determination 'of which gaming activities are allowed.  In addition, this court has previously applied a preemption balancing test to IGRA.'" Id.

Assuming without deciding that the Ninth Circuit would agree with *Gaming Corp.*, the Tribe has not adequately met its burden of establishing "that IGRA has this 'extraordinary preemptive power' to completely preempt the state law claims at issue." See Missouri, 164 F.3d at 1108.  The issue is whether the County's nuisance abatement claim interferes with Tribe's governance of gaming activities or interferes with the Tribe's decision as to which gaming activities are allowed. See Siletz Indians, 134 F.3d at 468 n.7; Gaming Corp., 88 F.3d at 550.

The IGRA does not define "gaming activities," but does define Class I, Class II, and Class III Gaming: Class I consists of traditional Indian games or social games played for prizes of

---

[8] Vacated on other grounds, 319 F.3d 1230 (9th Cir. 2002) (vacating judgment and remanding with instruction to dismiss because ruling that Indian tribes were not necessary and indispensable parties was error).

[9] With respect to preemption, the Siletz Tribe specifically argued that the balancing of interests test that the Ninth has used in the past, e.g. Cabzon Band of Mission Indians v. Wilson, 37 F.3d 430 (9th Cir. 1995), was unnecessary because of the arguable breadth of IGRA preemption. See Siletz Indians, 134 F.3d at 486 n.7.

1    minimal value; Class II includes bingo and games similar to bingo, plus certain card games;
2    Class III is comprised of all games not in classes I or II.  25 U.S.C. § 2703; United States v. 103
3    Elec. Gambling Devices, 223 F.3d 1091, 1094 (9th Cir. 2000).  Given that the various class
4    gaming definitions are generally in terms of a particular type of game, "gaming activity" would
5    seem to be the actual playing or provision of the games identified as Class I, Class II, or Class III
6    and/or the necessary conduct associated with playing or providing the identified games.
7         Here, the basis of the nuisance claim is the failure of the Tribe to obtain two construction
8    permits, a demolition permit and a grading permit, in connection with the construction of a hotel
9    and spa.  See id. at ¶¶ 11, 14, 20.  The County argues that this case is simply about the
10   construction of a hotel and not about gaming regulation.  There is no dispute that the casino has
11   been built and been operating for several years, the hotel and spa will have some relation to the
12   casino, and there appears to be no dispute that the hotel and spa will sit somewhere on the same
13   48.53 acre plot upon which the casino sits and currently operates.  However, neither in the notice
14   of removal nor in the opposition to remand does the Tribe adequately explain how the
15   construction of a hotel and spa would constitute gaming activity.  The permits at issue appear to
16   be general construction permits and do not appear to be aimed specifically at gaming or casinos.
17   Importantly, the nuisance abatement claim does not attempt to stop the Tribe from conducting
18   gaming at its casino.  The County's claim does not, for example, attempt to shut down the casino,
19   to limit the number of slot machines that are on the premises, to limit the types of games that are
20   played in the casino, or to regulate how the games are played.  Instead, the suit seeks to halt
21   construction of the hotel and spa.  Although the hotel and spa will have some type of connection
22   to the casino, see Complaint at ¶¶ 14-16, the Tribe has not adequately established the precise
23   connection, the location of the hotel and spa, or that the hotel and spa deal with the governance
24   of gaming.  The Tribe seems to assume that any connection to the casino is sufficient for
25   complete preemption, but has not cited authority in support of this assumption.  The Tribe's
26   opposition to remand directs the Court to Section 10.8 et seq. of its compact with the State.  That
27   section deals with and is entitled "Off-Reservation Environmental Impacts."  The permits at issue
28   here, however, are health and safety construction permits, and the Tribe does not explain how

Section 10.8 of the compact would affect these permits in this case.  The duty to obtain these permits seems to arise from the act of construction and not gaming, cf. Gaming Corp., 88 F.3d at 550; Hull, 146 F.Supp.2d at1051, and the Tribe has not adequately met its burden of explaining how this suit, aimed at the construction of a hotel and spa, affects the Tribe's decision of which gaming activities are allowed, see Siletz Indians, 134 F.3d at 468 n.7, or the Tribe's governance of gaming.  See Gaming Corp., 88 F.3d at 550.

## **CONCLUSION**

It is the Tribe's burden of establishing jurisdiction and the propriety of removal.  Emrich, 846 F.2d at 1195.  There is a strong presumption against removal, and if there is any doubt as to the right of removal in the first instance, federal jurisdiction must be rejected.  Duncan, 76 F.3d at 1485; Gaus, 980 F. 2d at 566.  If, prior to final judgment, it appears that the Court lacks subject matter jurisdiction, the court shall/must remand to the state court.  28 U.S.C. § 1447(c); Gibson, 261 F.3d at 932; Page, 45 F.3d at 133.  As discussed above, it appears that this Court lacks subject matter jurisdiction.  First, although for different reasons, both parties essentially agree that the Court lacks subject matter jurisdiction.  This strongly suggests a lack of jurisdiction.  Second, the complaint does not allege a federal cause of action on its face, and the defense of tribal immunity is not a basis for removal.  Graham, 489 U.S. 840-42.  It was the Tribe's burden to establish that the IGRA completely preempts the nuisance abatement claim.  The nuisance abatement claim is based on the failure to obtain general construction permits.  The duty to obtain these permits appears to arise from the performance of construction activities and not from gaming.  Cf. Gaming Corp., 88 F.3d at 550; Hull, 146 F.Supp.2d at 1051.  The claim does not attempt to regulate the gambling or the games being played at the casino in any way.  The Tribe has not adequately described the location or the connection of the hotel to the casino or how construction of the hotel is a gaming activity.  Given the strict construction against removal, and that doubts over the propriety of removal lead to remand, the Tribe's burden is not light; for purposes of this motion to remand, the Tribe has not adequately dispelled doubt and has not adequately shown that the nuisance abatement action is "completely preempted" through the

IGRA.  Thus, it appears that the court lacks subject matter jurisdiction and, as required, this Court must remand this case to state court pursuant to 28 U.S.C. § 1447(c).

Accordingly, IT IS HEREBY ORDERED that:

1. The currently set hearing date of December 19, 2006, is VACATED;
2. The County's motion to remand is GRANTED and this case is REMANDED to the Superior Court of Madera County in accordance with 28 U.S.C. § 1447(c);
3. The County's motion for temporary restraining order and the Tribe's motion to transfer are DENIED as moot.

IT IS SO ORDERED.

**Dated:   December 18, 2006**            /s/ Anthony W. Ishii
0m8i78                                                UNITED STATES DISTRICT JUDGE